FILED

03/21/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 7, 2017 Session

## QUINTON CLOVIS v. TENNESSEE HUMAN RIGHTS COMMISSION

**Appeal from the Chancery Court for Davidson County**
**No. 15-1366-1      Claudia Bonnyman, Chancellor**

_____

### No. M2016-01534-COA-R3-CV

_____

This appeal arises from a complaint filed with the Tennessee Human Rights Commission in which Plaintiff alleged he was denied public accommodation at the Metropolitan Public Library in violation of the Tennessee Human Rights Act. Tenn. Code Ann. §§ 4-21-301 and -501. More specifically, Plaintiff contended that the Library discriminated against him based on his Christian beliefs and in retaliation for filing a previous religious discrimination complaint against the Library. After conducting an investigation, the Commission found no reasonable basis for Plaintiff's claim. Plaintiff appealed the Commission's decision to the Davidson County Chancery Court. Following a hearing, the chancery court upheld the decision of the Commission. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Quinton Clovis, Nashville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Eugenie B. Whitesell, No. 15911, Senior Counsel, Nashville, Tennessee, for the appellee, The Tennessee Human Rights Commission.

# MEMORANDUM OPINION[1]

Since March 2013, Quinton Clovis ("Plaintiff") frequented the main downtown branch of the Metropolitan Public Library ("the Library") to use the computers. Library security guard, Richard Freudenthal, encountered Plaintiff for the first time on November 12, 2014, in response to a patron's complaint that Plaintiff was causing a disruption in the computer lab by loudly detailing his sexual exploits. Mr. Freudenthal approached Plaintiff and requested that he lower his voice and stop talking about his sex life. Plaintiff became agitated and began using foul language, which included calling one of the patrons a "faggot."

In response to Plaintiff's repeated disruptions, Mr. Freudenthal escorted Plaintiff out of the computer lab and to the Library desk where he issued Plaintiff a 30-day suspension for violating one of the Library's rules of conduct—engaging in harassing or threatening behavior or using abusive language. Mr. Freudenthal requested that Plaintiff sign the "Conduct Offense Notification" form and tried to explain the appeal process to him. However, Plaintiff refused to sign the form, and he refused to listen to Mr. Freudenthal's explanation. Instead, Plaintiff continued to use abusive language and would not leave the Library, violating yet another code of conduct—refusing to leave the Library premises upon suspension.

Mr. Freudenthal radioed three other guards (including security officer, Charles Farm) and building maintenance supervisor, Buddy Pruitt, for assistance. Plaintiff still refused to leave and directed a string of obscenities at the security guards as they arrived on the scene. As a result, the security guards called the Metropolitan Nashville Police Department for assistance. Plaintiff asked the security officers to permit him to use the restroom, and the officers allowed him to do so. As Plaintiff came out of the restroom, he continued with the abusive and threatening language. Consequently, Mr. Freudenthal issued a one-year suspension accompanied by an additional "Conduct Offense Notification." The police arrived on the scene shortly thereafter and escorted Plaintiff off the premises.

Contrary to Mr. Freudenthal's explanation of events, Plaintiff contends that Library officials targeted him because he possessed a flash drive that contained

---

[1] Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

documents pertaining to an investigation he was conducting on local hate crimes along with important religious materials. Plaintiff alleges Library staff and officials attempted to confiscate and destroy this flash drive, but that he stopped them by concealing it in his underwear.[2] Though Plaintiff admits that he never discussed his Christian beliefs with Library staff, he claims they knew of his affiliation because he openly read his Bible and listened to gospel music in the computer lab. The security officers and the building maintenance supervisors claimed they had never met Plaintiff prior to that incident and did not know anything about Plaintiff's religious affiliation. Plaintiff further alleges that Library staff suspended him in retaliation for a previous complaint he filed against the Library with the Tennessee Human Rights Commission ("the Commission").

Throughout the Library and online, the Library posts its rules of conduct along with the consequences for violating those rules and the appeal process. Any individual may appeal his or her suspension for violating the rules of conduct by filing a Request for Suspension Reconsideration within seven days from the date the individual receives notice of the suspension. Plaintiff delivered his appeal to the Library on November 24, 2014; however, because he delivered it outside of the seven-day window, the Library did not consider it.[3]

On December 18, 2014, Plaintiff filed a complaint with the Commission alleging that Library officials denied him public accommodation in violation of the Tennessee Human Rights Act. Tenn. Code Ann. §§ 4-21-301 and -501. More specifically, Plaintiff contended that the Library discriminated against him based on his Christian beliefs and in retaliation for filing a previous religious discrimination complaint against the Library; however, he presented no evidence of such a complaint and the Commission could find none. After conducting an investigation, the Commission found no reasonable basis for Plaintiff's claim. Plaintiff appealed the Commission's decision to the Davidson County Chancery Court.

The administrative record was filed on December 30, 2015. Following a hearing, the chancery court entered judgment affirming the Commission's decision to dismiss the complaint.

Plaintiff appeals that decision and contends the chancery court erred by upholding the decision of the Commission to dismiss Plaintiff's complaint against the Library.

---

[2] Plaintiff also alleges that Library staff attempted to poison his food to prevent him from eating in the Library.

[3] Plaintiff did not timely appeal because he was incarcerated for conduct unrelated to the incident at the Library.

ANALYSIS

Judicial review of decisions by the Tennessee Human Rights Commission is governed by Tennessee Code Ann. § 4-21-307.

> A complainant . . . aggrieved by an order of the commission, including an order dismissing a complaint or stating the terms of a conciliation agreement, may obtain judicial review, and the commission may obtain an order of the court for enforcement of its order, in a proceeding brought in the chancery court or circuit court in which the alleged discriminatory practice that is the subject of the order occurred or in which a respondent resides or transacts business.

Tenn. Code Ann. § 4-21-307(a). "The court can grant such temporary relief or a restraining order as it deems just and enter an order enforcing, modifying and enforcing as modified, or setting aside in whole or in part the order of the commission, or remanding the case to the commission for further proceedings." Tenn. Code Ann. § 4-21-307(b)(6).

Significantly, the Commission's findings of fact "shall be conclusive unless clearly erroneous in view of the probative and substantial evidence on the whole record." Tenn. Code Ann. § 4-21-307(b)(5). The standard of review is the same in the appellate court as in the trial court. "Probative and substantial evidence" is akin to "substantial and material evidence." *Plasti-Line, Inc. v. Tenn. Human Rights Comm'n*, 746 S.W.2d 691, 693 (Tenn. 1988). As such, the Commission's factual determinations should be upheld if the reviewing court finds relevant evidence that a reasonable mind might accept to support a reasonably sound basis for the action under consideration. *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988). Substantial and material evidence requires something less than a preponderance of the evidence, but more than "a scintilla or glimmer." *Id*. at 280. "Substantial evidence is not limited to direct evidence but may also include circumstantial evidence or the inferences reasonably drawn from direct evidence." *Id*.

As noted earlier, Plaintiff contends that Library officials targeted him because he was conducting an investigation on local hate crimes and gathering important religious materials related to his Christian beliefs. However, Plaintiff admits that he never discussed his Christian beliefs with Library staff. Although he claims they knew of his affiliation because he openly read his Bible and listened to gospel music in the computer lab, this claim is refuted by the security officers and the building maintenance supervisor.

Mr. Freudenthal stated that he had no prior interactions with Plaintiff and had no knowledge of his religious affiliation. Likewise, Charles Farm, another security guard at the Library, denies any prior interactions with Plaintiff or knowledge of Plaintiff's

religious beliefs. Additionally, Mr. Farm confirmed Mr. Freudenthal's account of the event in question, stating that Mr. Freudenthal requested his assistance, and after a brief encounter with Plaintiff, Mr. Farm called police due to Plaintiff's aggressive behavior. He further explained that the security officers followed the Library's guidelines for responding to disruptive patrons by warning Plaintiff and by ultimately suspending him for his continued behavior, which posed a safety risk to other patrons.

Building and maintenance supervisor, Buddy Pruitt, also stated that he had never seen Plaintiff before the incident of November 12, 2014, and had never heard Plaintiff mention religion, discrimination, or retaliation. Mr. Pruitt provided further confirmation of Mr. Freudenthal's account, stating that Mr. Freudenthal called him when Plaintiff became belligerent in the computer lab to help "calm" him. He explained that Library policy requires banning patrons who become abusive, and the suspension of Plaintiff was appropriate.

The standard of review applicable to this case states that the Commission's findings of fact "shall be conclusive unless clearly erroneous in view of the probative and substantial evidence on the whole record." Tenn. Code Ann. § 4-21-307(b)(5). Having reviewed the modest record, we find probative and substantial evidence that provides a reasonably sound basis for the Commission's decision. *See Wayne Cnty.*, 756 S.W.2d at 279. Moreover, as the chancery court correctly found, there is "no proof that the Library discriminated against [Plaintiff] on religious grounds." For these reasons, we affirm

## In Conclusion

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the Appellant, Quinton Clovis.

_____

FRANK G. CLEMENT, JR., P.J., M.S.